IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Criminal Case No.**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**ANGELA PETERSEN,**

    **Defendant.**

## PLEA AGREEMENT

The United States Attorney's Office for the District of Colorado (the "Government"), by and through, Bryan David Fields, Assistant United States Attorney for the District of Colorado, and the defendant, Angela Petersen, personally and by counsel, Gary Lozow, submit the following Plea Agreement, pursuant to D.C.COLO.LCrR 11.1.

### I. OBLIGATIONS OF THE PARTIES

#### A. Defendant's Obligations

1.    The defendant agrees to waive indictment and plead guilty to an Information charging her with misprision of a felony, a violation of Title 18, United States Code, Section 4.

Court's Exhibit

1

### B. The Government's Obligations

2. In exchange for the defendant's plea of guilty to the count charged in the Information, the Government agrees not to file any additional criminal charges in the District of Colorado against the defendant based on information presently known to the Government, as outlined in the statement of facts set forth in paragraphs 10 – 30.

3. In addition, provided the defendant does nothing inconsistent with accepting responsibility between the date this agreement is signed and the date of sentencing, the government will recommend that the defendant receive a two-level reduction for acceptance of responsibility, pursuant to Section 3E1.1(a) of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). Should the Court determine that the applicable offense level under the Guidelines is 16 or higher, the government agrees to request that the defendant receive an additional one-level reduction pursuant to Section 3E1.1(b) of the United States Sentencing Guidelines.

### C. Defendant's Waiver of Appeal

4. The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the Government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided for in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies

to a total offense level of **5**, or (3) the Government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

5.  The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II.  ELEMENTS OF THE OFFENSE

6.  The parties agree that the elements of the offense to which this plea is being tendered are as follows:

*First*, a federal felony was committed;

*Second*, the defendant had knowledge of the commission of that felony;

*Third*, the defendant failed to notify an authority as soon as possible;

*Fourth*, the defendant did an affirmative act to conceal the crime.

*Tenth Circuit Pattern Jury Instructions (Criminal Cases)*, § 2.08 (2011 ed.) (updated Feb. 2018).

## III.  STATUTORY PENALTIES

7.  The maximum statutory penalty for violating 18 U.S.C. § 4 is not more than

3

3 years' imprisonment; a fine of $250,000 or two times the gross gain or loss, whichever is greater (or both a fine and imprisonment); not more than 1 year of supervised release; and a $100 special assessment. If probation or supervised release is imposed, the Court may order restitution as a condition of probation or supervised release. A violation of supervised release or probation may result in a separate prison sentence and additional supervision.

## IV.   COLLATERAL CONSEQUENCES

8.   The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

9.   The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That factual basis, accurate at all times relevant to this agreement, is set forth below in paragraphs 10 – 30. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or the Court's overall

sentencing decision.

## A. Relevant Individuals and Entities

10.   Company A was a limited liability company in the business of providing construction services and organized under the laws of Colorado. At all times relevant, its principal office was at 920 West 10th Street in Pueblo, Colorado, and its principal business office was physically located in a HUBZone. Between 2003 and 2012 Company A was on the SBA's List of Qualified HUBZone Small Business Concerns.

11.   M.C.G. was a resident of Pueblo, Colorado. M.C.G. was the owner of Company A and acted as its Operating Officer.

12.   The defendant was hired as a bookkeeper for Company A in 2006. The defendant was a resident of Pueblo, Colorado from 2006 to 2015. The defendant served in part as an Office Manager for Company A from 2011 to 2015.

13.   The General Services Administration ("GSA") was a Department and Agency of the United States with responsibility for, among other things, managing federal real property. In 2012 the GSA issued a solicitation for, and awarded, a contract to renovate a bathroom at the Denver Federal Center. The solicitation and contract number was GS-08P-12-JA-C-0005 (the "GSA contract").

## B. Background: The SBA's HUBZone Program

14.   At all times relevant to the misprision offense charged in the Information, the Historically Underutilized Business Zone program ("HUBZone") was a federal program authorized by statute and established to provide federal contracting assistance

to small business concerns (i) operating in a HUBZone, and (ii) employing persons that actually reside in a HUBZone, in an effort to increase employment opportunities, investment, and economic development in those often times blighted communities.

15. The HUBZone program has historically been administered by the United States Small Business Administration, ("SBA") a Department and Agency of the United States.

16. HUBZone qualified small businesses were eligible to receive procurement assistance in the form of: (a) small business contracts set-aside exclusively for HUBZone program contractors; and (b) in procurements conducted under full and open competition (and not as a set-aside for small businesses), HUBZone program offerors were accorded a 10% HUBZone evaluation preference whereby the prices of all other non-HUBZone offerors are escalated by 10% thereby creating, albeit artificially, a more level competitive playing field.

17. To qualify for the HUBZone program, a business concern was required to establish that (a) it was a small business, (b) it was controlled and owned at least 51% by United States citizens, (c) it maintained a principal office located within a HUBZone, and (d) at least 35% of its employees resided within a HUBZone. 13 C.F.R § 126.200.

18. Before a small business concern could participate in the HUBZone program and bid on a HUBZone set-aside contract or otherwise receive the HUBZone evaluation preference, it had to be certified by the SBA. 13 C.F.R § 126.300. In order to be certified by the SBA the contractor had to prepare and submit a HUBZone

application with supporting documentation demonstrating that the concern met each of the requirements of the HUBZone program, that all of the statements and information contained in the application form, and in supporting attachments to the application, were true, accurate and complete. Under the rules, applicants had a continuing duty to inform the SBA of any material changes that could affect the applicant's eligibility for the HUBZone program. Likewise, the Company A was always obligated to make good faith efforts to maintain compliance with residency requirements

19. HUBZone contractors are required to apply for program recertification every three years. 13 C.F.R § 126.500. As part of the recertification process, the small business concern was required to once again submit an application for re-certification by SBA, signed by an authorized officer, demonstrating that it met the requirements of the HUBZone program, that the statements in the application for re-certification were true, accurate and complete, and that the concern would immediately notify the SBA of any material change which could affect the concern's eligibility for the HUBZone program.

20. HUBZone-certified small business concerns were required to retain documentation regarding employee residency and other requirements for six years from the date of the submission of their initial application and any subsequent renewal applications for recertification. Under its rules, the SBA reserved the right to conduct program examinations of HUBZone participants in order to verify the accuracy of information provided in an application for SBA certification to the program.

### C. The GSA Contract and the Protest

21. On January 23, 2012, Company A submitted and caused to be submitted to the GSA a proposal to provide services related to the GSA Contract. This contract was offered as a "Total HUBZone Set-Aside" contract that was only available to HUBZone small business concerns.

22. Company A was awarded the GSA contract on or about February 23, 2012. Between approximately April 5, 2012 and August 6, 2012, Company A submitted approximately 5 invoices claiming a total of $142,071.40 for services performed on the contract and was paid approximately $142,071.40.

23. On or about June 23, 2012 the SBA notified Company A that it would be decertified as a HUBZone small business.

24. On or about July 16, 2012, the SBA notified Company A, through M.G.C., that it was formally protesting the GSA's decision to award Company A a HUBZone set-aside contract. The SBA's notice invited Company A to submit documents verifying that it qualified for the HUBZone program at the time it submitted its bid for the GSA contract on January 23, 2012 and when it was awarded that contract on February 23, 2012. That same notice warned M.G.C. that "penalties may be imposed when a person or business concern provides false information to the Federal government."

25. M.G.C. responded to the SBA's protest in a letter dated July 16, 2012 that was submitted to the SBA on or about July 18, 2012 (the "July 18, 2012 Submission.") That letter stated that "[Company A] Service and Supply was in compliance with the

HUBZone residency requirements" on January 23 and February 23, 2012. In a subsequent letter to the SBA, dated July 30, 2012, M.G.C. once again stated "[Company A] believes it was in compliance with the HUBZone residency requirement at the time of the offer and award" (the "July 30, 2012 Submission"). On August 1, 2012, the SBA requested that Company A provide a utility bill for the HUBZone residences of the defendant and another Company A employee, S.H. That same day, M.G.C. submitted to the SBA a letter attaching affidavits, signed by the defendant and S.H., representing that the defendant and S.H. resided in HUBZones on January 23, and February 23, 2012 (the August 1, 2012 Submission).

26. The defendant knew that the affidavit she signed and sent to the SBA as part of the August 1, 2012 Submission was false: the affidavit stated that the defendant resided in a HUBZone on January 23 and February 23, 2012 when, in fact, she did not. The defendant provided the Affidavit at the request of M.G.C. In fact, M.G.C drafted the Affidavit. The parties stipulate and agree that the Affidavit, as submitted, was within the jurisdiction of the executive branch of the United States and that the Affidavit was material in relation to Company A's eligibility for the HUBZone residence requirements. The parties stipulate and agree that the defendant's Affidavit constituted a false statement in violation of Title 18 U.S.C. § 1001.

27. The defendant knew or reasonably should have known that making a material false statement in violation of 18 U.S.C. § 1001 was a felony. However, the Defendant failed to notify an authority of a commission of that felony as soon as

9

possible. Instead, on or about June 22, 2016, Defense Criminal Investigative Service ("DCIS") Special Agent Albert Weisner sent an email to M.C.G. requesting information related to Company A's employees as of July 21, 2011 and September 15, 2011 and their HUBZone status, as well as their respective personnel and payroll records. The email was related to an investigation focused on whether Company A had made misrepresentations about its HUBZone status even earlier than 2012 when it submitted a bid for, and obtained, a contract to build a Regional Training Institute for the Colorado National Guard (the "RTI Project").

28. The defendant, knowing that she had made a false statement regarding her residency and Affidavit, at the request of M.C.G., responded on behalf of Company A, under the direction of M.C.G, to Special Agent Weisner's request by sending to the Denver Resident Agency of the DCIS, on June 29, 2016, a package containing two spreadsheets misidentifying herself as a Company A employee who lived in Company A's HUBZone. M.G.C took part in authorizing and submitting spreadsheets to the Special Agent which included the defendant's misidentification to show that at least 35% of Company A's employees resided in HUBZones on July 15 and September 21, 2011. Absent other false statements authorized by M.C.G on behalf of Company A, thirty-five percent of Company A's employees had not resided in a HUBZone on July 15 and September 21, 2011. Accordingly, Company A would not have qualified for the 10% preference it had received when the government evaluated the bids for the RTI Project.

29. The defendant intentionally submitted the spreadsheets knowing of her

false description of her residency. This was done in order to inappropriately provide incorrect support for Company A's HUBZone eligibility. This submission could well have influenced DCIS's investigation. Company A failed to truthfully advise the SBA and DCIS Special Agent Weisner that Company A's HUBZone eligibility was not in place at the time of the RTI Project. The defendant should have notified the appropriate authorities of Company A and M.G.C's felonious actions. These actions were intended to, in part, prevent DCIS from uncovering the false statements in the defendant's affidavit, which had been submitted as part of the August 1, 2012 Submission.

30.   The defendant stipulates and agrees that the loss resulting from Company A's submission may have affected some of the money awarded on the GSA bathroom contracts.

## VI.   ADVISORY GUIDELINE COMPUTATION AND §3553 ADVISEMENT

31.   The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. §3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

      a.      Pursuant to U.S.S.G. § 2X4.1, the base offense level for misprision of a felony is nine levels lower than the offense level for the underlying offense. The offense level for the underlying offense, a false statement under 18 U.S.C. § 1001, is governed by U.S.S.G. § 2B1.1: the defendant receives a base offense level of 6 pursuant to § 2B1.1(a)(2) and an increase of 8 levels because the losses were greater than $95,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(E). The offense level for the underlying offense is thus 14. Accordingly, after applying § 2X41., the defendant's offense level is **5.**

      b.      Pursuant to U.S.S.G. §3E1.1(a), the defendant should receive a two-level decrease in the offense level for pleading guilty and accepting responsibility. The defendant has accepted responsibility for the offense, will waive indictment, and will plead guilty to the charge in the Information. The resulting offense level is **3**.

      c.      The parties understand any computation of the defendant's criminal history category is tentative and that the defendant is in a better position to know the relevant facts than is the government. The criminal history category will be more completely and accurately determined by the Probation Department and the additional facts regarding criminal history can greatly affect the final guideline range. Nevertheless, based on information known to the parties at this time, the parties believe that the defendant has no criminal history and falls into Criminal History Category I.

      d.      Accordingly, with a (tentative) Criminal History Category of I, and an estimated offense level of **3**, the advisory guideline range is 0-6 months' imprisonment. However, in order to be as accurate as possible, with the criminal history category

undetermined at this time, the estimated offense level could conceivably result in a range of imprisonment from 0 months (bottom of Category I at level 3) to 9 months (top of Category VI at level 3).

  e. Pursuant to U.S.S.G. § 5E1.2, assuming an estimated offense level of 3, the fine range for this offense is $200 - $9,500, plus applicable interest and penalties.

  f. Pursuant to U.S.S.G. §5D1.2(a)(2), if the Court imposes a term of supervised release, that term shall be at least one but not more than 1 year.

  g. The parties understand that, pursuant to 18 U.S.C. §§ 3563(b) and 3583(d) the Court may impose restitution as a condition of probation or supervised release in an amount to be determined by the Court. The government will not seek restitution in this case.

32. The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

33. No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the Guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the Guidelines or that there is an aggravating or mitigating factor of kind or degree not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the Guidelines range precludes either party from asking the Court to vary entirely from the

advisory Guidelines and to impose a non-Guidelines sentence based on other factors set forth in 18 U.S.C. § 3553.

## VII.   **ENTIRE AGREEMEMT**

34.   This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the Government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 9-27-19

ANGELA PETERSEN
Defendant

Date: 7/27/19

Gary Lozow
Attorney for Defendant

Date: 9/27/19

Bryan David Fields
Assistant United States Attorney